# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

*Southern Division*

**JACOB A. PERRONE, an individual**

       Plaintiff,

 -vs-                                                              Case No. 1:24-cv-
                                                                   HON.

**BCBS LIFE INSURANCE COMPANY., a Michigan Corporation**
**BCBS MICHIGAN, a Michigan Corporation**

       Defendant.

_____/

**PERRONE LAW PLLC**
Jacob A. Perrone (P71915)
Attorneys for the Plaintiff
3310 Kresge Lane
East Lansing, MI 48823
(517) 719-4657
jacob.perrone@yahoo.com

_____

## PLAINTIFF JACOB A. PERRONE'S VERIFIED MHPAEA COMPLAINT AGAINST DEFENDANT BCBS MICHIGAN

_____

/s/ *JP*

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

    Plaintiff, **JACOB A. PERRONE**, (hereinafter referred to as "Jake" unless referred to otherwise), through his undersigned counsel, complains and alleges against Defendants BCBS Michigan Life Insurance Company, and Blue Cross Blue Shield Michigan (collectively "BCBS Michigan"), as follows:

### PARTIES, JURISDICTION AND VENUE

1.    Jake is a natural person residing in Clinton County, Michigan, Western District.

1

2.      BCBS Michigan Life Insurance Company and its subsidiary BCBS Michigan. are insurance companies and acted as insurers and claims administrators for the health insurance plan providing coverage for the Plaintiff, ("the Plan") during the treatment at issue in this case.

3.      The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Jake's spouse was a participant in the Plan and Jake was a beneficiary of the Plan at all relevant times.

4.      Jake received medical care and treatment at FHE Health in Deerfield Beach, Florida ("FHE") from March 27, 2021, to Apil 23, 2021. FHE is a residential treatment facility located in Deerfield Beach, Florida, which provides acute inpatient treatment to patients with severe mental health, behavioral, and/or substance abuse problems.

5.      Before leaving for FHE in Florida from Michigan Jake's spouse called the Plan and discussed options for treatment and was told the Plan would pay the claim through their reimbursement process. Jake relied on the Plan's representative's advice and paid for the inpatient stay at FHE for 30 days.

6.      After Jake sought reimbursement through BCBS Michigan Life Insurance Company, acting in its own capacity, or through its subsidiaries and affiliates BCBS Michigan denied claims for payment of Jake's medical expenses in connection with his treatment at FHE. This lawsuit is brought to obtain the Court's order requiring the Plan to reimburse Jake for the medical expenses he has incurred and paid for treatment.

7.      This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C.§1331.

8.	Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because BCBS Michigan does business in Michigan, and because the treatment at issue was approved while Jake was in Michigan. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Michigan where it is more likely his privacy will be preserved.

9.	The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Jake's Developmental History and Medical Background

10.	In November 2017 Jake was diagnosed with Bipolar during a manic/psychotic episode and was diagnosed with attention deficit hyperactivity disorder ("ADHD") which made it hard for him to focus and stay on task. Jake's mother and father described Jake as having a difficult temperament since he was a toddler.

11.	In 2017 Jake was given psychiatric medications after two inpatient hospitalizations. The first hospitalization was for 3 days and the second lasted 17 days. Jake continued to struggle with anxiety and depression as time progressed and often had suicidal ideation in addition to manic episodes.

12.	These behaviors continued in September 2020 and November 2020 respectively when Jake was involuntarily committed for 14 days in September 2020 and 5

days in November 2020.

13. After the hospitalization in November 2020, it was apparent that Jake was potentially treatment resistant. This precipitated the necessity for additional mental health services.

14. Jake's treatment team recommended that he be placed in a residential treatment center at least a 30 day stay to stabilize him after the nearly 7–8-month mania.

15. There were no other alternatives anywhere in the country that were more cost effective because of the inpatient and acute nature of the treatment.

## FHE

16. Jake was admitted to FHE on March 27, 2021, after consulting with BCBS Michigan.

17. In a letter dated January 24, 2022, as attached in attached as **EXHIBIT A**, incorporated herein by reference, BCBS Michigan denied payment for Plaintiff's treatment at FHE. Jake was provided with a copy of this letter. The reviewer gave the following justification for the denial:

> In your appeal letter, you stated that you were advised by BCBSM that your services would be covered. Upon review of a phone call placed to our provider servicing department on March 25, 2021, by a representative from Deerfield Florida House, I confirmed that we gave specific benefit information to the facility based on the NPI (provider identification number) and procedure codes that the provider intended to bill. The provider was advised that the services would not be covered by the health plan. Further, inpatient charges for room and board are not covered without a preapproval to assess the necessity of the admission, which we are unable to complete when the admitting facility is nonparticipating.

> On the same day (March 25, 2021), we received a phone call placed by your wife. I confirmed that Mrs. Perrone stated that she was informed by the facility that the services were declined by the insurance, which is true, and agreed to self-pay. Your wife asked if there were any options for reimbursement of any portion of the charges. Mrs. Perrone was provided with general out-of-network coverage information, which is not specific to the actual services being performed, and the representative informed your wife that she could

4

submit a request for reimbursement.

It is important to know that Blue Cross provides a disclaimer which advises callers at the time of the call that benefit quotes are not a guarantee of payment. Payment is determined upon receipt of the claim. Because the claim reported with your wife's request for reimbursement does not support covered services (the services were performed by a nonparticipating provider and there is no preapproval to support the necessity of the admission), the claim does not qualify for out-of-network coverage under the health plan. Further, we are unable to honor a request for payment on a one-time basis based on the series of phone calls reviewed because correct and specific benefit information was provided before the services occurred prompting a self-pay arrangement.

Blue Cross recognizes that the representative assisting your wife could have been more specific regarding the coverage information provided, and we will use this information to better our member services for our members.

18.     BCBS acknowledge that they received a phone call on March 25, 2021, from Jake's spouse requesting approval for the services. BCBS acknowledges that she was informed that she could submit a request for Member Reimbursement that would pay for the services after specifically inquiring into the whether it would be approved. By providing assurances that BCBS would pay for the claim through Member Reimbursement they agreed to pay the claim.

19.     If the services were to be performed by a non-participating provider, BCBS shouldn't have said the services would be paid for through Member Reimbursement. Further, there is no mechanism for a 30-day inpatient acute treatment care facility that insurance would pay for.  There is no way to quantify the severity of the illness to determine if a longer duration of treatment is necessary.  BCBS Michigan takes advantage of this by denying the type of care that is necessary in acute situations such as 30 day required inpatient, based on archaic principles and outdated logic.

20.     Further, based upon it being a psychiatric emergency it is very evident that a pre-approval should have been granted. BCBS also recognizes that they could have been more

specific regarding the coverages. …

21. On April 22, 2022, Jake requested that the denial of payment for his treatment be evaluated by an external review agency.

22. State run or subsided mental hospitals were not intended to treat individuals suffering from severely acute symptomology such as an imminent risk of suicide, homicide, or psychosis in the severely acute mentally ill. The Plan led Jake to believe the 30 day required inpatient treatment at a private residential facility would be approved and it was clearly medically necessary given the persistence of symptoms after half-hearted treatment in a dilapidated and antiquated state facility. Jake requested that the external review agency not utilize the criteria utilized by BCBS Michigan in its review as they were incongruent with generally accepted standards of mental health care and incorrectly mandated acute symptomology for an acute level of care.

23. Jake stated that MHPAEA compelled BCBS Michigan to offer mental health and substance use treatment "at parity" with comparable levels of medical or surgical treatment such as skilled nursing facilities. The MHPAEA prohibits non quantifiable treatment limitations, and that because BCBS Michigan required acute symptomology for his mental health care, it would have also had to require acute symptoms for treatment in a medical facility where a patient is required to be held inpatient for 30 days in order to be in compliance with MHPAEA.

24. Jake's medical records will show an extremely combative and uncontrollable psychotic, and that while in treatment he continued to struggle with psychosis, anxiety, panic attacks.

25. Jake hereby requests that BCBS Michigan provide him with a copy of all

documents under which the Plan was operated including the Certificate of Coverage, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, the Plan's mental health and substance abuse criteria, the Plan's skilled nursing and rehabilitation facility criteria, and any opinions from any physician or other professional regarding the claim. (collectively the "Plan Documents")

26. BCBS Michigan later informed the Plaintiff that the external review organization had upheld the denial.

27. BCBS Michigan's use of acute care criteria violated MHPAEA, because it did not conform with generally accepted standards of care when reviewing residential level mental health or substance abuse claims.

28. The Plaintiff exhausted his pre-litigation appeal obligations under the terms of the Plan and ERISA.

29. The denial of benefits for Jake's treatment was a breach of contract and caused him to incur medical expenses that should have been paid by the Plan in an amount totaling at least $25,000.00 not including prejudgment interest and consequential or punitive damages.

## FIRST CAUSE OF ACTION
(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

30. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as BCBS Michigan, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. §1104(a)(1).

31. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review"

7

of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

32. BCBS Michigan and the agents of the Plan breached their fiduciary duties to Jake when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in Jake's interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of Jake's claims.

33. The actions of BCBS Michigan and the Plan in failing to provide coverage for Jake's medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION
### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

34. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

35. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

36. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

37. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty,

and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

38.     Specifically, the Plan's medical necessity criteria for acute mental health treatment benefits are more stringent or restrictive than the medical necessity criteria the Plan applies to acute level medical or surgical benefits.

39.     Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for Jake's treatment include acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does BCBS Michigan exclude or restrict coverage of medical/surgical conditions based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner BCBS Michigan excluded coverage of treatment for Jake at FHE.

40.     BCBS Michigan, requiring Jake satisfy acute care medical necessity criteria to be approved for a minimum 30-day residential treatment violates MHPAEA because the Plan does not require individuals receiving treatment at acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits. Further, and importantly, the practical necessity of imminent treatment for psychiatric emergencies obviates the necessity for a stringent insurance company review of whether coverage will be approved. This would be violative of public policy.

41.     In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and BCBS Michigan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and

more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

42. When BCBS Michigan and the Plan receive claims for acute level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. BCBS Michigan and the Plan evaluated Jake's mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity where equivalent mental health benefits were denied when the analogous levels of medical or surgical benefits would have been paid.

43. The violations of MHPAEA by BCBS Michigan and the Plan give the Plaintiff the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that the actions of the Defendants violate MHPAEA;

(b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and BCBS Michigan insured plans as a result of the Defendants' violations of MHPAEA;

 (f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

 (g) An order equitably estopping the Defendants from denying the Plaintiff's claims in violation of MHPAEA; and

 (h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

44. In addition, Plaintiff is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

## THIRD CAUSE OF ACTION
### (Breach of Contract – Common Law)

45. Defendants entered into a contract with Plaintiff to provide insurance for medical care. A copy of the contract has not been attached as it is in the possession of the BCBS Michigan.

46. Plaintiff incurred a hospital bill that was at least tentatively approved by the hospital before the stay in October of 2021 at Sparrow Hospital in a partial hospitalization program. The Plan denied the claim on the basis of the program utilizing group therapy although group therapy is the standard in the mental health community for inpatient of quasi-inpatient settings.

47. After completing the program, BCBS Michigan did not approve the hospital stay although the hospital had previously run Jake's insurance and obtained at least preliminary approval for the partial hospitalization program.

48. Plaintiff promptly brought these matters to BCBS Michigan attention after the initial insurance coverage denial and they did not overturn the denial.

49. Defendants' conduct as described in this complaint constituted a breach of the contract between the parties.

50. Jake has been damaged by Defendants' breach in the amount of at least $25,000.00 which consists of the medical bills incurred in October 2021 for the stay at FHE.

**WHEREFORE**, the Plaintiff, **JACOB A. PERRONE**, seek relief as follows:

1. Judgment in the total amount that is owed for Jake's medically necessary treatment at FHE under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiff's Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g);

4. enter judgment in *his* favor and against Defendant in an amount in excess of $25,000.00, plus interest at the statutory rate from the date of filing; and

5. For such further relief as the Court deems just and proper.

DATED this 14th day of December 2024.

1. I verify that the foregoing Verified Complaint, and the allegations therein are true and correct to the best of my knowledge, information, and belief.

2. I declare under penalty of perjury that the foregoing is true and correct.

By ___s/*Jacob A.Perrone*___

County of Plaintiffs' Residence:  
Clinton County, Michigan

**JACOB A. PERRONE**  
Attorney for Plaintiff  
Individually as Plaintiff